## Denniston, et al. v. Kenova Oil Company, et al.

(Decided April 30, 1920.)

### Appeal from Menefee Circuit Court.

1. **Mines and Minerals—Rent—Estoppel—Forfeiture.**—In an oil and gas lease dated January 28, 1916, provision was made for the payment of rent quarterly in advance until the completion of the well. None of these payments was made as specified, one being 275 days overdue; all the payments were accepted without objection; oil was discovered on an adjoining tract of land July 30, 1918; the installment due July 28, 1917, reached lessor when about twelve days overdue, but he refused to accept it; Held,

that by their course of dealing the lessor was estopped from claiming a forfeiture because of delay in the payment of the last installment, in the absence of notice that he would elect to declare the lease forfeited.

2. Mines and Minerals—Rent—Forfeiture.—The courts generally hold lessees in oil and gas leases to a strict compliance with the terms of the lease, and unless the lessor by his acts or conduct has induced or led the lessee to believe that the payment of rentals will not be required when due the lessor has the right in the case of default in the payment of any installment of rent to declare the lease forfeited.

3. Mines and Minerals—Rent—Forfeiture.—Where lessor accepts rent past due and does not require strict conformity to the lease as to payment of rentals, if he desires to forfeit the lease for failure to promptly meet these payments, equity requires that reasonable notice of this intention be given.

4. Mines and Minerals—Default in Payment of Rent—Waiver.—Receiving rent after default made will be a waiver of the right to declare a forfeiture for failure to pay the rent at the time stipulated in the lease.

W. B. WHITE, CHARLES D. GRUBBS and T. L. CAUDEL for appellants.

J. B. ADAMSON, H. R. PREWITT and CLAY & HOGGE for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

The appellant, Denniston and his wife, on January 28, 1916, executed to Friend & Maple an oil and gas lease upon a tract of about 100 acres of land in Menefee county, for a consideration of $1.00. In the event a well was not completed within one year from that date lessees agreed to pay a yearly rental of 10c per acre, payable quarterly in advance during the life of the lease, and until a well was completed. It is unnecessary to mention other provisions of the lease.

March 7, 1916, this lease was assigned to the appellee, Kenova Oil Company, which company on August 23, 1918, assigned it to the appellees, Back and Knox. September 5, 1918, Knox assigned to appellee Kash an interest in said lease. Prior to August 23rd, 1918, Knox secured from the Kenova Company an option to purchase this and other leases, being the same as those included in the assignment of August 23rd. August 5th, 1918, Denniston and wife executed to the appellant Chiles a lease on the same property covered by the lease

to Friend & Maple, for the recited consideration of $1.00. The real consideration was $1,000.00, which was paid August 17, 1918.

The present suit was filed by Denniston August 7, 1918, a *lis pendens* notice was filed in the county clerk's office on the following day. A cancellation of the first lease was sought on the ground that the failure to pay the installment of rent due July 28, 1918, forfeited the lease. Chiles was made a defendant in the answer and cross-petition filed by the appellees. In his answer Chiles alleged the non-payment of the rental due July 28, 1918, that the consideration for his lease was not to be paid until it was determined that the first lease had been forfeited; it was further alleged that in consideration of advice given to the appellees by him, which enabled them to keep alive certain leases which they were contemplating purchasing, appellees had agreed to waive any claim to or interest in the first lease herein mentioned, and they are now estopped from asserting any claim or right thereto. That acting upon this agreement and being satisfied the lease had become forfeited he paid to Denniston the agreed consideration of $1,000.00.

It is conceded that Knox was not present when his co-appellees conferred with Chiles; Back admits the substance of the agreement as contended by Chiles, and adopts the Chiles pleading as his own. Back did not claim to waive or give to Chiles any interest of Knox. We are satisfied that whatever may have been the agreement between Chiles and others on August 4th or 5th, nothing was said or done in any wise affecting the interest of Knox in and to said lease.

The main question at issue relates to the status of the first lease. If as contended by appellant it had become forfeited because of the non-payment of the installment due July 28, 1918, the lessors were privileged to execute the top lease to Chiles, but if at the time of the execution of the lease to Chiles the first lease was still in existence then Chiles acquired no right by the lease of August 5th, and is entitled only to such interest as he may have received under the agreement with or assignment from Back.

The lower court dismissed the petition, cancelled the second lease, held that Chiles was the owner of an undivided one-half interest in the first lease, by reason of the assignment or agreement with Back, and adjudged

' to Knox and Kash the remaining one-half of said lease-hold.

The due dates of the installments of rent or delay money and the dates when paid are shown in the following statement:

| Installment Due. | Paid. |
|---|---|
| Jan. 28, 1917 | Oct. 30, 1917 |
| Apr. 28, 1917 | Aug. 13, 1917 |
| July 28, 1917 | Aug. 13, 1917 |
| Oct. 28, 1917 | Sept. 27, 1917 |
| Jan. 28, 1918 | Mar. 4, 1918 |
| Apr. 28, 1918 | Apr. 17, 1918 |

A check for the installment due July 28, 1918, was mailed at New York, August 5, 1918, reached lessor's postoffice August 7th, and was delivered to him August 9th, but he declined to receive it, as likewise a tender of said installment made to him on October 30, 1918.

The Kenova Company, in its letter dated October 30, 1917, to the lessor enclosing the installment for January 28, 1917, included in its check $10.00 as the total rental, for the year 1916, which at a date subsequent to the execution of the lease it agreed to pay.

From the foregoing table it will be seen the parties entirely disregarded the terms of the lease as to the time of payment. Prior to the execution of the top lease to Chiles the lessor never demanded a strict compliance with the provision of the lease, but accepted, as will be seen, rentals in some instances several months overdue. Of the six installments from January, 1917, to April, 1918, two of them were paid in advance, one about 31 days, the other 11 days; but as to the others, they were paid and received without question when 16, 35, 107, and 275 days overdue.

Since the main object or consideration for oil and gas leases is the prospective exploration of the land, the courts generally have held the lessees to a strict compliance with the terms and conditions of the lease, and unless the lessor has lulled the lessee into a feeling of security and by his acts or conduct induced or led the lessee into the belief that he would not be required to pay the delay money promptly when due, the lessor has the right, whenever default has been made by the lessee in the payment of the installments of rent, to declare a forfeiture of the lease. Where the rent has been paid and accepted unconditionally by the lessor this satisfies

the demand of the contract up to that date, and the lessee has the right to assume that the lessor was satisfied to receive the rentals in lieu of the development of the land. Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 604, 99 S. W. 668.

Where the lessor accepts past due installments of rent or compensation money from time to time and does not require the lessee to strictly conform to the provisions of the lease in regard to the payment of rentals, in case he desires to forfeit the lease for failure to promptly meet the stipulated demands at their maturity, equity requires that reasonable notice be given to the lessee of his intention to demand strict payment or forfeiture. Any course of dealing that leads lessee to believe the lessor will not demand the forfeiture growing out of the failure to promptly pay the rental, offers a reasonable excuse to lessee for not paying promptly, and where the lessor under such circumstances attempts to declare a forfeiture, without reasonable notice to the lessee of his intention so to do, relief against forfeiture will be afforded in equity. Archer's Law and Practice in Oil and Gas Cases, p. 239. The least favored of all forfeitures are those founded upon mere delay in the payment of money.

It is manifest that no question would have been raised about the few days of delay in the payment of the July, 1918, installment had not the owners of an adjoining lease on July 30, 1918, discovered oil on their premises. At this time lessees had no notice there would be any change in the policy of the past to accept payments overdue. Except for their acquiesence in the receipt of rent installments when long past due, lessors would have had the right, under the lease, to declare a forfeiture upon non-payment of any installment. As said in Thornton on the Law of Oil and Gas, sec. 183:

"Receiving rent after default made will be a waiver of the right to declare a forfeiture for failure to pay the rent at the time stipulated for its payment in the lease."

To same effect see Pomeroy's Equity Jurisprudence, sec. 451; and Taylor on Landlord and Tenant, sec. 497, and the following cases: Orr v. Zimmerman, et al., 63 Mo. 72; Hukill v. Myers, 36 W. Va. 639; Dellinger v. Smith, 142 La. 1009, 77 So. 947; Thropp, etc. v. Field, 26 N. J. Eq. 82; Westmoreland, etc., N. Gas. Co. v. DeWitt, et al., 130 Pa. St., 235, 18 Atl. 724.

Great stress is placed by respective counsel on the case of Zeigler, etc. v. Hopkins, etc., 258 Fed. 467, and same case on appeal, 259 Fed. 43. In that case there was a ten days' delay in the payment of the rental. The district court held that this delay did not work a forfeiture of the lease, but the circuit court of appeals reversed this judgment. Drawing a distinction between an "or" and an "unless" lease, it held that the lease was of the latter character, and the failure to pay the rental when due forfeited all rights of the lessee.

In Ohio Valley Oil Co. v. Irvin Development Co., 185 Ky. 517, 212 S. W. 110. there was a three days' delay in the payment of the rental and we held this did not forfeit the lease. In that case the rent was deposited in the bank as provided in the lease; it was commingled with other money belonging to the lessor, and there had been no return or offer on the part of the lessor to return said rental. This case was disposed of on demurrer, and we held that under the allegation of the pleading the lower court should have overruled the demurrer to the answer as amended.

In Plummer v. Southern Oil Co., 185 Ky. 243, 214 S. W. 896, the installment fell due on Sunday, October 21, 1917; a check was left with the depository on the following day; the money was not placed to the credit of the lessor because he had instructed the cashier not to receive it. The payment was held to be in time.

These cases are not directly in point because in no one of them does it appear what had been the course of dealing between the parties regarding the payment of delay money, the vital question here. Acceptance of one payment one day late was held in Frank Oil Co. v. Bellevue Gas & Oil Co., 29 Okla. 719, insufficient to show the lessor reasonably indicated to lessee it would waive strict compliance as to time of payment.

In the instant case, instead of one, several rental periods are involved. Not a single payment under the lease was made according to its terms. That lessee did not make and lessor did not demand payment quarterly evinces such a departure from and waiver of the rigid provisions of the lease as makes it inequitable for lessor, under the circumstances to insist upon a forfeiture.

Why did Denniston on several occasions willingly accept gales of rent long past due, if, as he now contends, a forfeiture for non-payment had taken place? By re-

ceiving the rent, when he could have insisted upon a forfeiture, he led lessees to believe that strict observance of their covenant in this respect would not be insisted upon, as it had not been before.

Having failed to speak when he should have spoken he will not be heard now when he attempts to declare the lease forfeited.

For the reasons herein stated the judgment will be affirmed.