494 F.2d 1164
 John C. RUCKELSHAUS, Successor Trustee in Bankruptcy for
Aldridge International Associates, Inc.,
Plaintiff-Appellant-Cross Appellee,
v.
BROWARD COUNTY SCHOOL BOARD, Defendant-Appellee-Cross Appellant.
 No. 73-2684.
 United States Court of Appeals, Fifth Circuit.
 May 30, 1974.
 
 John D. Raikos, Thomas A. Deal, Indianapolis, Ind., Herbert L. Markow, James E. Tribble, Mark Hicks, Miami, Fla., Bamberger & Feibelman, Indianapolis, Ind., John Camp, Jr., Miami, Fla., for plaintiff-appellant.
 James T. Haley, John L. Britton, Miami, Fla., for defendant-appellee.
 Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This appeal stems from the failure of plaintiff-appellant vendee and defendant-appellee vendor to consummate a contract to purchase property, four parcels known as the 'Old Fort Lauderdale High School,' for $1,950,000. The appellant initially made a deposit of $100,000 and the closing date was set for September 14, 1965. At appellant's request, appellee reset the closing date four times in consideration of the payment of additional deposits totalling $140,000. After repeated closing extensions to January 12, February 11, and April 11, 1966, appellee fixed May 12, 1966 as the last extension. Appellant also failed to meet this engagement. Paragraph 9 of the purchase agreement stated:
 
 
 2
 '9. If Offeror defaults in any of its agreements contained herein Offeree may retain the sums theretofore deposited with and/or held by Offeree as and for liquidated damages and thereafter both parties shall be relieved of any further liability or obligation hereunder, one unto the other.'
 
 
 3
 The district court granted summary judgment allowing appellee to retain as liquidated damages the deposits of $240,000 which constituted 12.3% Of the contract price of $1,950,000.
 
 
 4
 The appellant first asserts that the contract was divisible in four parts and that the $240,000 was 40% Of the $600,000 amount required for release of one parcel. We readily reject this contention since the contract as a whole calls for the performance of purchase of all four parcels, each purchase integrally related to the other, and sets only one purchase price for the entire tract, $1,950,000.
 
 
 5
 Appellant's second argument is likewise groundless. It is virtually the unanimous rule of all jurisdictions that whether a stipulation is for liquidated damages or a penalty is a question of law for the court. Appellant admits that the damages were not capable of accurate ascertainment at the time of the contract, but claims that this Court should relieve against the forfeiture of the $240,000 as unconscionable at the time of the breach.
 
 
 6
 In this diversity suit, the Florida law controls. The recent case on liquidated damages, Hutchison v. Tompkins, 259 So.2d 129 (Fla.1972) (a vendor action to recover deposit), summarizes the Florida law,
 
 
 7
 'The better result, in our judgment, as Hyman (Hyman v. Cohen, 73 So.2d 393 (Fla.1954)) contemplates, is to allow the liquidated damage clause to stand if the damages are not readily ascertainable at the time the contract is drawn, but to permit equity to relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of (the) breach. For instance, assume a situation in which damages were not readily ascertainable at the time the contract was drawn, and the parties agreed to a liquidated damage provision of $100,000. Purchaser later repudiated the contract; vendor resold the land to another party, which because of fluctuations in the real estate market, resulted in a loss to himself of only $2,000. In such a case a court following the Hyman theory would allow the liquidated damage clause to stand, because damages were not readily ascertainable at the time of drawing the contract, but would, as a court of equity, relieve against the forfeiture as unconscionable . . . 'The instant case falls squarely within Hyman. A contract for the sale of land generally suffers from the same uncertainty as to possible future damages as a lease agreement. The land sale market in Florida fluctuates from year to year and season to season, and it is generally impossible to say at the time a contract for sale is drawn what a vendor's loss (if any) will be should the contract be breached by purchaser's failure to close. Accordingly, in the instant case we conclude that the damages which the parties could expect as a result of a breach were not readily ascertainable as of the time the contract was drawn up; therefore, under Hyman, the trial and District Courts erred in construing the liquidated damage provision as a penalty and dismissing the complaint. Moreover, because the definition of 'readily ascertainable' in Pembroke v. Caudill, supra (160 Fla. 948, 37 So.2d 538), is incompatible with the rationale of Hyman, we hereby recede from Pembroke to the extent of such conflict.'
 
 
 8
 The property in question was subsequently sold for an amount $590,000 below the original contract price. Therefore, the appellant's arguments that the appellee suffered no actual damages and that thus forfeiture of the $240,000 deposit is unconscionable, are without merit. The appellant's assertion that the resale price was not established in the record is unfounded. The interrogatories propounded by the appellant to the appellee stated:
 
 
 9
 '14. Does defendant contend that it was damaged as a result of any default on the part of offeror on account of the result of the non performance of any terms of the said Offer to Purchase? If so, please state: (a) Whether such damages are compensable. (b) The amount of such damages. (c) The manner and means by which said damages were computed. (d) If defendant contends that such damages were fixed by agreement and liquidated, the manner and means by which the amount was agreed.'
 
 To which the appellee replied:
 
 10
 '14. Yes.
 
 
 11
 (a) Yes. (b) $590,000 (c) The difference between the contract price of September, 1964 and the actual sale price in July of 1968. (d) The contract between the defendant and Paris G. Singer contained in paragraph 9 a liquidated damage provision which provided that the seller could retain all sums deposited with it on account of said contract in the event of default.'
 
 
 12
 Nowhere is the amount of this subsequent sale price disputed by the parties. The appellee also alleged in the summary judgment motions that the property was sold after appellant's default for $1,360,000, an amount $590,000 below the original contract price, which fact was uncontradicted by appellant, so the trial court was fully apprised of this undisputed fact.
 
 
 13
 This affirmance is also soundly supported by Beatty v. Flannery, 49 So.2d 81, 82 (Fla.1950) (vendee action to recover deposit), where the Florida Supreme Court held that the plaintiff vendee in default was not entitled to recover the $3,000 deposit on a $30,000 purchase. In adopting the vendor's contention, the court said:
 
 
 14
 'It is well settled that, even in the absence of such a forfeiture provision, a vendee in default is not entitled to recover from the vendor money paid in part performance of an executory contract . . .
 
 
 15
 'We recognize that there are exceptions to the general rule that a vendee in default cannot recover, but we find no such circumstances in this case. There was no intimation of fraud on the part of the vendor, nor that the vendee's failure to fulfill the contract was due to any misfortune beyond his control that gave the vendor a benefit, the retention of which was shocking to the conscience of the court. Nor is it here contended that there was a mutual rescission of the contract.'
 
 
 16
 See O'Neill v. Broadview, Inc., 112 So.2d 280 (Fla.App.1959) (vendee action to recover deposit), where a Florida court held that the amount provided by the contract as liquidated damages, forfeiture of the $1,500 deposit on a $10,440 contract (14%), was not sufficient to shock the conscience of the court. Cf. Hook v. Bomar, 320 F.2d 536 (5th Cir. 1968), where this court construing Florida law held that the district court was fully justified in its decision that the forfeiture of a $30,000 deposit on a $95,000 contract (32%) constituted such a penalty as to shock the judicial conscience.[1]
 
 
 17
 We find no basis for disturbing the district court's conclusion that the contract provision relating to liquidated damages was valid and enforceable.
 
 
 18
 The judgment is affirmed.
 
 
 
 [1]
 Appellant relied on Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538 (1948) (vendor action to recover deposit), where the court struck down a forfeiture of $6,200 on a $67,500 contract as a penalty. However the authority of Pembroke not only was undermined by Hutchison, but also was distinguished in Beatty, supra at 82, as follows:
 'The Pembroke v. Caudill case, supra . . . relied on by appellants, was not concerned with an attempt by a vendee in default to recover a part payment, but on the contrary involved a suit by the vendor to recover from the vendee an amount stipulated therein to be liquidated damages in the event of default by the vendee. This court expressly stated that 'We have made no attempt to settle certain questions which may arise under a stipulation similar to the one we have considered, in a case where a deposit of money has actually been made by the prospective purchase for the benefit of the owner. * * * we express no opinion on the point, because we have no such issue before us.' As the record in the instant case stands, we do not consider the Pembroke case to be controlling.'